**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00052-JHM-HBB**

**STEPHEN W. BROWN**                                                        **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Stephen W. Brown ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 17) and Defendant (DN 20) have filed a Fact and Law Summary.

By Order entered April 29, 2020 (DN 10), the parties were notified that oral arguments would not be held unless a written request was filed and granted.   No such request was filed.

For the reasons that follow, the undersigned recommends[1] the Court affirm the final determination of the Commissioner, and judgment be granted for the Commissioner.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on February 4, 2017 (Tr. 20, 157-59, 160-61).   Plaintiff alleges to have become disabled on October 1, 2016, as a result of borderline personality disorder, chronic fatigue syndrome, human immunodeficiency virus (HIV), narcolepsy without cataplexy, recurrent major depressive disorder, testosterone

---

1   Pursuant to 28 U.S.C. § 636(b)(1)(B) and General Order 2018-02, the District Judge referred this matter to the undersigned for "consideration and preparation of a report and recommendation" (DN 9).

deficiency, attention deficit disorder, sleep apnea, benign hypertension, and hypothyroidism (Tr. 20, 57-58, 72-73, 87, 160).   Plaintiff's claim was initially denied on June 1, 2017, and the denial of the claim was affirmed upon reconsideration on July 20, 2017 (Tr. 20, 57-70, 72-86, 87-90, 96-98).   Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee on September 27, 2018 (Tr. 20, 39).   Virtually present at the hearing from Owensboro, Kentucky was Plaintiff and his attorney Dennis Stark[2] (Tr. 39).   During the hearing, Leslie F. Lloyd testified as a vocational expert (Tr. 20, 39, 52-55).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2017, the alleged onset date[3] (Tr. 22).   At the second step, the ALJ determined Plaintiff has the following severe impairments: attention deficit hyperactive disorder (ADHD), asymptomatic HIV, narcolepsy without cataplexy, depressive disorder, anxiety, low testosterone, chronic fatigue, and personality disorder (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following restrictions: he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; work cannot require driving a motor vehicle; he must avoid moving mechanical parts, unprotected heights; he is limited

---

2   The ALJ's determination asserts that Plaintiff was represented by Thomas C. Newlin (Tr. 20), while the hearing transcript states that Plaintiff was represented by Dennis Stark (Tr. 39).   To resolve this conflict of information, the undersigned will follow the information presented in the hearing transcript.   The undersigned acknowledges that Thomas C. Newlin was the party who filed Plaintiff's request for review by the Appeals Council (Tr. 154).

3   On September 27, 2018, Plaintiff filed a motion to amend the onset of disability date from October 1, 2016 to May 20, 2017 (Tr. 177).

to simple, routine tasks and 2 hours of concentration in periods of 8 hours; he can have occasional interaction with coworkers and supervisors; he must not have any interaction with the general public; and any changes in routine work setting must be rare or gradually introduced (Tr. 24).   The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 27-28).   After this finding, the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 28).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from May 20, 2017 through the date of the ALJ's decision (Tr. 29).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 154-55).   The Appeals Council denied Plaintiff's request for review (Tr. 5-6, 9-12).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in

evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-6, 9-12).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 4: Appendix 1 Listings

1.   Arguments of the Parties

Plaintiff contends that substantial evidence does not support the ALJ's step three findings addressing whether he meets or medically equals the paragraph "B" criteria to Listings 12.04, 12.06, and 12.08 (DN 17-1 PageID 650-53).   In support of his conclusion, Plaintiff points to the ALJ's affording "significant weight" to the Agency consultants who opined mild or moderate limitations in the paragraph "B" criteria, but the ALJ found moderate limitations in all four paragraph "B" criteria (Id. at PageID 650); see (Tr. 23).   Further, Plaintiff complains that the ALJ did not explain this inconsistency between those opinions and his paragraph "B" criteria findings (Id.).   Plaintiff also disputes the ALJ's categorization of the paragraph "B" criteria when the ALJ stated Plaintiff was able to participate in the hearing, meet with representative and agency staff, interact with friends and family, and attend church, among other activities (Id. at PageID 652).

Plaintiff instead argues that Plaintiff's representative simply took down the information and presented it, while the only applicable rationale presented was Plaintiff's limited time to testify during the administrative hearing (Id.). Ultimately, Plaintiff concludes that "while the ALJ did not find [Plaintiff] was markedly limited in two of the four provisions of criteria B, [the ALJ] did find that [Plaintiff] was moderately limited in all four of those categories[, and t]hese factors combine to, at least potentially, reasonably support a finding of medical equivalency to Listing 12.06" (Id. at PageID 653).

In contrast, Defendant claims that "[t]he ALJ provided sufficient articulation about her step three findings to allow this Court to see her consideration of Plaintiff's impairments [. . .], and Plaintiff has failed to demonstrate that this analysis was lacking in any material way" (DN 20 PageID 669). Defendant further claims that "[s]ubstantial evidence supports the ALJ's Step Three finding" (Id.). Defendant notes that the ALJ expressly considered Listings 12.04, 12.06, and 12.08 and found that Plaintiff did not meet or medically equal those Listings, especially in light of Plaintiff's impairments not causing at least two marked limitations or one extreme limitation in the paragraph "B" criteria (Id. at PageID 671). Countering Plaintiff's argument of cumulative limitations creating medical equivalency, Defendant states, "Moreover, it is not the mere accumulation of impairments that demonstrates medical equivalence, but rather, the functional limitations" (Id.). Further, the ALJ awarded great weight to the opinions of the state reviewing psychologists, who did not find any marked or extreme limitations (Id. at PageID 672).

2.  Discussion

At the third step, a claimant will be found disabled if his impairment(s) meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 416.920(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 416.925(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. § 416.925(c)(3).   An Administrative Law Judge will find that an impairment "*meets* the requirements of a listing when it satisfies all the criteria of that listing." 20 C.F.R. § 416.925(c)(3) (emphasis in original); *see* Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).

The severity requirements for Listings 12.04, 12.06, and 12.08 are set forth in paragraph "B" of each listing.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A.   The paragraph "B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "4. *Adapt or manage oneself (paragraph B4)*".   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4.   These four areas of mental functioning are evaluated on a five-point rating scale:

> a. *No limitation (or none)*.   You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> b. *Mild limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. *Moderate limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. *Marked limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. *Extreme limitation*.   You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e.   To satisfy the paragraph "B" criteria for Listings 12.04, 12.06, and 12.08, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2, Listing 12.04 Depressive, bipolar and related disorders, Listing 12.06 Anxiety and obsessive-compulsive disorders, and Listing 12.08 Personality and impulse-control disorders.

The paragraph "C" criteria in Listing 12.04 and 12.06 are an alternative to the paragraph "B" criteria.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(1).4   The paragraph "C" criteria are used "to evaluate mental disorders that are 'serious and persistent.'"   Id.   The Administrative Law Judge will "find a mental disorder to be 'serious and persistent' when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfies both C1 and C2."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(2)(a).   "The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D)."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(2)(b).   "The criterion in

---

4   There are no paragraph "C" criteria for Listing 12.08.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(1); *see also* Tr. 23.

C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(G)(2)(c). "'Marginal adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."   Id.

An Administrative Law Judge will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   Medical equivalence can be found in one of three ways:

> (1)(i) If [the claimant has] an impairment that is described in appendix 1, but —
>> (A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or
>> (B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>>> (ii) [The Administrative Law Judge] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.
>
> (2) If [claimant has] an impairment(s) that is not described in appendix 1, [the Administrative Law Judge] will compare [claimant's] findings with those for closely analogous listed impairments.   If the findings related to [claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [claimant's] impairment(s) is medically equivalent to the analogous listing.
>
> (3) If [claimant has] a combination of impairments, no one of which meets a listing [], [the Administrative Law Judge] will compare [claimant's] findings with those for closely analogous listed impairments.   If the findings related to [claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [claimant's] combination of impairments is medically equivalent . . . .

9

20 C.F.R. § 404.1526(b); Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017) (summary of the three ways the Social Security Administration can find medical equivalence).[5]   The Sixth Circuit has observed that this "regulation allows for variation in the number, type, or severity of the claimant's conditions, so long as the claimant's overall impairment is 'at least of equal medical significance' to a listed impairment."   Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 784 (6th Cir. 2017) (quoting 20 C.F.R. § 404.1526(b)).

In the present case, the ALJ found that Plaintiff had a moderate limitation in all four paragraph "B" criteria (Tr. 23).   When evaluating Plaintiff's understanding, remembering, or applying information, the ALJ stated that "[Plaintiff] is able to apply information sufficiently to contribute at a hearing for benefits, appear at scheduled physician visits, prepare meals, perform personal care activities, launder clothing, shop in stores, use a computer, drive a car, and follow instructions at times" (Id.) (citing Exhibits 3E, 4E, 7E, and the hearing testimony).   Next, Plaintiff's ability to interact with others was moderate because he "is able to interact socially well enough to attend physician visits, live with family, attend church, and meet with representatives and agency staff in the application and hearing of his disability case" (Id.).   Third, Plaintiff "is able to concentrate sufficiently to offer testimony regarding disabilities, shop, perform personal

---

5   Social Security Ruling ("SSR") 17-2p rescinded and replaced SSR 96-6p as of its effective date, March 27, 2017. 2017 WL 3928306, at *1.   The Court acknowledges a split among the district courts within the Sixth Circuit as to whether SSR 17-2p or the now-rescinded SSR 96-6p applies to cases where, as here, the application for benefits was filed before the effective date for SSR 17-2p but the Administrative Law Judge conducted the administrative hearing and issued the decision after March 27, 2017.   See Thomas o/b/o C.T. v. Berryhill, No. 18-CV-02467-TLP-tmp, 2019 WL 7580293, at *8-9 (W.D. Tenn. Nov. 7, 2019) (survey of such cases), report and recommendation adopted, Thomas v. Comm'r of Soc. Sec., 2020 WL 214754 (W.D. Tenn. Jan. 14, 2020).   The Court finds the reasoning in Thomas persuasive and concludes that SSR 17-2p, not SSR 96-6p, applies here because the ALJ conducted the administrative hearing and issued the decision after March 27, 2017.   Id. Therefore, the ALJ is not required to obtain a medical opinion to find that Plaintiff does not medically equal a listing, but the ALJ must obtain a medical opinion to find that Plaintiff does medically equal a listing.

care activities, handle some personal financial matters, use a computer, drive a car and follow instructions to some degree[,]" which resulted in a moderate limitation for concentrating, persisting, or maintaining pace (Id.).   Finally, Plaintiff's ability to adapt or manage himself is moderate because he "is able to manage [his] emotions sufficient in a hearing for disability benefits, visit with physicians and other health care professionals, shop in stores and interact with friends or family" (Id.).   As for the paragraph "C" criteria for Listings 12.04 and 12.06, the ALJ stated that "[t]here was insufficient evidence in the record to establish the existence of the[] criteria in combination[, and . . .] although [Plaintiff]'s functioning is limited in some ways, it is not restricted to the level required to meet the "C" criteria for either listing" (Tr. 24).

Turning to the other information present in the record, Dr. Jane Brake, PhD, was the Agency reviewing consultant who conducted the initial determination (Tr. 62-63 Regarding the paragraph "B" criteria, Dr. Brake indicated that Plaintiff's medically determinable impairments do not precisely satisfy the diagnostic criteria in paragraph "A" to Listings 12.04, 12.06, and 12.08 (Tr. 62).   In the more detailed mental RFC findings, Dr. Brake opined that Plaintiff had a moderate limitation while interacting with others,[6] a mild limitation in concentration, persist, or maintain pace,[7] and no limitations in understanding, remembers, or applying information and adapting or managing oneself (Id.).

---

6   Dr. Brake noted that Plaintiff had a moderate limitation in his ability to interact appropriately with the general public, but he was otherwise not significantly limited in his social interactions (Tr. 67).

7   Dr. Brake marked that Plaintiff had a moderate limitation in his ability to maintain attention and concentration for extended periods, but he was otherwise not significantly limited in his concentration and persistence limitations (Tr. 66-67).

In the reconsideration stage, Dr. Michelle Bornstein, PsyD, also found that Plaintiff's medically determinable impairments do not precisely satisfy the diagnostic criteria in paragraph "A" to Listings 12.04, 12.06, and 12.08 (Tr. 78).   However, Dr. Bornstein stated that Plaintiff had more significant limitations for the paragraph "B" criteria by finding moderate limitations in "interact with others," "concentrate, persist, or maintain pace," and "adapt or manage oneself" (Id.).   Understand, remember, or apply information was the only criterium that was not changed—remaining at no limitation (Id.).   Interestingly, Dr. Bornstein's mental RFC assessment was identical to Dr. Brake's, and Dr. Bornstein's "Additional Explanation" was almost identical Dr. Brake's (Compare Tr. 68 with Tr. 83-84).

As noted above, Plaintiff asserts that "while the ALJ did not find [Plaintiff] was markedly limited in two of the four provisions of criteria B, [the ALJ] did find that [Plaintiff] was moderately limited in all four of those categories[, and t]hese factors combine to, at least potentially, reasonably support a finding of medical equivalency to Listing 12.06" (DN 17-1 PageID 653). To support this claim, Plaintiff cites to Anthony v. Comm'r of Soc. Sec., No. 18-1171, 2019 WL 3941258, at *5 (E.D. Mich. June 18, 2019) (Id.).   Like the present case, the ALJ in Anthony's case found that she had "moderate limit[ations] in each area of mental function set out in criteria B[,]" but neuropsychologist Dr. Darren Fuerst, Ph.D., opined that his "assessment reflects an extreme limitation in Anthony's ability to concentrate, persist and maintain pace, and marked limitations in his ability to interact with others and to understand, remember or apply information." Anthony, 2019 WL 3941258, at *4.   Like the opinion of Ms. Scott in the present case, if Dr. Fuerst's opinions had been accepted, Anthony would have met one of the applicable Listings.   Id. However, earlier in the report and recommendation, the Magistrate Judge found that "Dr. Fuerst's

12

opinion should have been afforded more weight because he was an examining source whose evaluation was supported by extensive diagnostic testing[,]"the opinion was "more consistent with the record as a whole[,]" and remand was necessary because "[t]he ALJ's decision that the opinion of nonexamining Dr. Kriauciunas [*sic*] was entitled to greater weight than that of Dr. Fuerst [was] not supported by substantial evidence." Id. at *3.  On remand, the ALJ was to discuss the paragraph "B" criteria in light of Dr. Fuerst's mental functional capacity assessment.  Id. at *4. Further, the ALJ was to reevaluate medical equivalency after reconsidering Dr. Fuerst's mental functional capacity assessment, specifically because "although the ALJ did not find Anthony was markedly limited in two of the four provisions of criteria B, she did find that he was moderately limited in all four of those categories[,]" and "these factors combine to, at least potentially, reasonably support a finding of medical equivalence to Listing 12.11[.]"[8]  Id. at *5.

While Plaintiff implies that the Magistrate Judge's report in Anthony, which was subsequently adopted by the District Court, may show the need for remand when a claimant has moderate limitations in all four paragraph "B" criteria, the District Court's rationale to overrule the Commissioner's second objection shows that the Magistrate Judge's remand recommendation was an "exercise of discretion" which favored consideration of additional medical evidence, and this "exercise of discretion" was "a finding to which the Commissioner did not object explicitly." Anthony v. Comm'r of Soc. Sec., No. 18-11717, 2019 WL 3296996, at *5 (E.D. Mich. July

---

[8]    Upon review of the Magistrate Judge's report by the District Court, the Commissioner objected to the "recommendation that the case be remanded to obtain a medical opinion on equivalency [because the recommendation] is based on a misstatement of the relevant rule."   Anthony v. Comm'r of Soc. Sec., No. 18-11717, 2019 WL 3296996, at *5 (E.D. Mich. July 23, 2019).   The District Court opined, "The magistrate judge did not misstate the Social Security Ruling, although she did not quote the complete text.  . . .  [T]he magistrate judge never suggested that the ALJ was *required* to obtain a medical opinion on equivalency.   Instead, the magistrate judge suggested that the ALJ *should* have done so . . . .  Id. (emphasis in original).

23, 2019).   Further, the Magistrate Judge's remand recommendation was premised upon unsubstantiated apportionment of medical opinion weight, as opposed to the Listings.   Anthony v. Comm'r of Soc. Sec., No. 18-1171, 2019 WL 3941258, at *3 (E.D. Mich. June 18, 2019).

Looking to the regulatory requirements for medical equivalency, listed above, the only near-applicable section would be §404.1526(b)(1)(i)(B): Plaintiff meets the findings for the listing, but the findings are not as severe as specified.   In these circumstances, an Administrative Law Judge could find medical equivalency "if [claimant has] other findings related to [the] impairment that are at least of equal medical significance to the required criteria."   20 C.F.R. § 404.1526(b)(1)(ii).   However, Plaintiff has not argued the existence of other findings, nor has he met that burden.   Instead, Plaintiff focuses solely on medical equivalency through multiple moderate limitations (see DN 17-1 PageID 653).   Simply because Plaintiff has been found to have moderate limitations in each of the paragraph "B" criteria does not warrant remand for reconsideration of medical equivalency, absent any evidence in the record to show "other findings" that "are at least of equal medical significance."

Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   Id.   Here, the ALJ followed the applicable law by conducting an appropriate Step Three analysis and explicitly considering applicable listings (Tr. 22-24).   Utilizing the evidence in the record, as well as the opinions of Plaintiff's treating physicians and the Agency non-examining consultants, the ALJ found moderate limitations in all paragraph "B" criteria, and the ALJ explained, based on examples in the record, why further limitations were not warranted (Tr. 23).

14

Finally, Plaintiff claims that the Agency reviewing consultants did not consider medical equivalency as to Listing 12.06 (Id.).   However, Dr. Brake, as mentioned above, found that Plaintiff's medically determinable mental impairment did not satisfy the diagnostic criteria in paragraph "A" to Listing 12.06, and the paragraph "B" criteria did not rise to the limitations required to meet the listing (Tr. 62-63).   As for the paragraph "C" criteria, Dr. Brake opined that the "[e]vidence does not establish the presence of the 'C Criteria'" (Tr. 63).   Dr. Bornstein also found that Plaintiff's medically determinable mental impairment did not satisfy the diagnostic criteria in paragraph "A" to Listing 12.06, and the paragraph "B" criteria did not rise to the limitations required to meet the listing, even with Dr. Bornstein's more restrictive limitations (Tr. 78).   Further, Dr. Bornstein found that the "[e]vidence does not establish the presence of the 'C Criteria'" (Id.).

Based upon the foregoing information and the evidence in the record, the ALJ's determination that Plaintiff had moderate limitations in all four paragraph "B" criteria, but not meet or medically equal the relevant listings, is supported by substantial evidence. Therefore, the ALJ's Step Three analysis is supported by substantial evidence, and Plaintiff is not entitled to relief under this challenge.

Challenge to Finding No. 5: Evaluation of Medical Opinion Evidence

1.  Arguments of the Parties

Tandem to his first argument, Plaintiff argues that "the ALJ afforded 'some weight' to the [consultative examination by Ms. Scott] because her opinion was 'inconsistent with the record as a whole[,]'" but Plaintiff claims the record is replete with evidence to substantiate claims of Plaintiff's inability to tolerate stress and the pressure of day-to-day employment to a marked

15

degree (DN 17-1 PageID 649-50).   Citing to the regulations and SSR 96-8p, Plaintiff asserts that the ALJ did not explain why the examining opinion was not adopted, especially since the Commissioner "give[s] more weight to the opinion of a source who has examined [Plaintiff] than to the opinion of a source who has not" (Id. at PageID 648).   *See* 20 C.F.R. § 404.1527(c)(1). Additionally, Plaintiff disputes the ALJ's award of "significant weight" to the Agency opinions, because, according to Plaintiff, the factors that may have supported the Agency's opinions were not valid due to changes in circumstances or insufficient evidence (DN 17-1 PageID 650-52).

Defendant challenges Plaintiff's contentions by claiming that "the ALJ stated well-articulated and supported reasons for assigning only some weight to Ms. Scott's opinion, and for declining to adopt Nurse Strader's extreme and unsupported restrictions" (DN 20 PageID 673) (citing Tr. 26-27).   Defendant recites the ALJ's opinion, specifically where the ALJ "observed that at the evaluation Ms. Scott conducted[ Plaintiff] was able to spell "world" backwards, recite serial 7s, perform basic calculations, recall three out of three unrelated words after five minutes, Plaintiff had adequate attention to task and concentration, and Plaintiff was oriented to person, place, and time" (Id. at PageID 674) (citing Tr. 25, 359).   As for Nurse Strader, Defendant claims that she is not an acceptable medical source for the ALJ's consideration, but he ALJ still considered the opinion and provided sufficient reasoning for not adopting the limitations (Id. at PageID 675-77).   *See* 20 C.F.R. § 404.1502(a).   Turning to the state Agency opinions, Defendant claims that the opinions were from "highly qualified" experts, and reliance on those opinions was "entirely proper" (DN 20 PageID 677-78).   *See* 20 C.F.R. § 404.1513a(b)(1); SSR 17-2p.

2.   Discussion

As Plaintiff filed his application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require Administrative Law Judges to evaluate every medical opinion in the record.   20 C.F.R. § 404.1527(c).   The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2).   In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."   Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

> The source of the opinion therefore dictates the process by which the Commissioner accords it weight.   Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. § 404.1527(c)(2).   If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).
>
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" Cole, 661 F.3d at 937. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted).

18

Turning to the argument before the Court, the ALJ awarded weight to the medical opinions as follows: significant weight to Agency mental health consultant Dr. Bornstein, partial weight to Agency medical consultant Dr. Allen Dawson, M.D., significant weight to Agency mental health consultant Dr. Brake, and some weight to examining psychological practitioner P. Leanne Scott (Tr. 26).   Included in the ultimate consideration was also Plaintiff's spouse's functional report and the opinion of Nurse Elizabeth Strader (Tr. 26-27).   Under 20 C.F.R. § 404.1527, Nurse Strader did not qualify as an "acceptable medical source" and did not warrant an assignment of weight. That being said, the ALJ stated that both Nurse Strader's and Plaintiff's spouse's "opinion[s] [were] important and [were] evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file" (Tr. 27).

As discussed previously, Dr. Brake stated that Plaintiff had a moderate limitation while interacting with others, a mild limitation in concentration, persist, or maintain pace, and no limitations in understanding, remembers, or applying information and adapting or managing oneself (Tr. 62-63).   Dr. Bornstein noted moderate limitations in "interact with others," "concentrate, persist, or maintain pace," and "adapt or manage oneself" (Tr. 78).   Understand, remember, or apply information was the only criterium that was not changed—remaining at no limitation (Id.).   When looking at these two reports alone, Plaintiff correctly notes the "inconsistency" exhibited by the ALJ finding moderate limitations in all four paragraph "B" criteria (DN 17-1 PageID 650).

But when discussing Ms. Scott's examination, the ALJ opined that "Ms. Scott accurately stated that [Plaintiff]'s ability to sustain attention and concentration [towards] the completion of tasks and his capacity to respond appropriately to supervisors, co-workers and the general public

19

in a work setting are both affected by his impairments to a moderate degree" (Tr. 26).   However, the ALJ disagreed with Ms. Scott's limitation assessment regarding Plaintiff's "ability to tolerate stress and the pressure of day to day employment" because a marked limitation exceeded the evidence in the record (Id.).   The ALJ utilized the supported portions of Ms. Scott's examination, in combination with Drs. Bornstein's and Brake's opinion, to find moderate limitations in the paragraph "B" criteria (Tr. 23).

Finally, Plaintiff claims, "the Agency lacked the opinion of [Nurse] Strader[,]" the opinion "most certainly could have altered the Agency findings and was not considered by the ALJ" (DN 17-1 PageID 641).   The second portion of this claim is directly refuted by the ALJ's report, where the ALJ recounted the opinion of Nurse Strader, properly concluded that she was not an "acceptable medical source" under § 404.1527, and still elected to consider the information (Tr. 27).   The ALJ noted that Nurse Strader opined that Plaintiff "has marked difficulties in social functioning and completing tasks due to deficiencies in concentration[, . . . and he] cannot lift more than 10 pounds occasionally and that he would be absent more than 4 days a month as a result of the impairment or treatment" (Id.) (citing Tr. 416-423).   Ultimately, the ALJ found Nurse Strader's opinions "excessive" and "wildly inconsistent with the other medical opinions" (Id.). Based on this information, the ALJ complied with the exact procedure Plaintiff claims was cast aside.

Therefore, Plaintiff's second argument is unpersuasive, and the ALJ's determination is supported by substantial evidence.   As such, Plaintiff is not entitled to relief under this challenge.

Challenge to Finding No. 5: Subjective Symptoms Evaluation

1. Arguments of the Parties

Plaintiff asserts that the ALJ's use of "boilerplate statements" regarding the ALJ's findings of Plaintiff's pain and other symptoms was inadequate because the ALJ did not adequately explain why she was discrediting Plaintiff's testimony (DN 17-1 PageID 654).   Plaintiff also argues that the ALJ's use of Plaintiff's ability to shop, clean, cook, and provide self-care are insufficient reasons to "disprove a physician's opinion that [Plaintiff] has disabling function" (Id.) (citing Floyd v. Finch, 441 F.2d 73, 114 (6th Cir. 1971)).   Plaintiff recounts the reported limitations in Plaintiff's daily life, such as an intermittent ability to perform simple functions and cleaning, irregular sleeping, chronic fatigue, and a tendency to "snap" and throw or break things when he is angry (Id. at PageID 656).   Plaintiff ultimately states that "this Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result" (Id. at PageID 658) (quoting Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)).

Defendant disputes Plaintiff's argument by claiming "it was entirely reasonable for the ALJ to consider the evidence of daily activities (which was extensive) and conclude that Plaintiff was not limited to the extent alleged" (DN 20 PageID 678).   However, Defendant also notes that "the ALJ certainly did not focus exclusively on Plaintiff's activities of daily living, and considered that based on the longitudinal evidence in the record, the allegations of significant pain and limitations were not well-supported by or consistent with other substantial evidence" (Id. at PageID 679).   "Ultimately, Plaintiff asks this Court to re-weigh the evidence relating to his impairments and decide the outcome of this case differently" (Id. at PageID 680).

2.   Discussion

In assessing a claimant's RFC, an Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. § 404.1529; SSR 16-3p.   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.   20 C.F.R. § 404.1529(a).   In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 404.1529(c)(3).

A plaintiff's level of daily activity is a factor which the Administrative Law Judge may consider in determining the extent to which pain is of disabling severity.   20 C.F.R. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.).

Another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ".  20 C.F.R. § 404.1529(c)(4).

Here, the ALJ articulated the above-mentioned two-step determination and found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 27).   In coming to this conclusion, the ALJ recounted Plaintiff's diagnoses, purported symptoms, treatments or medications, Plaintiff's examination results, the ALJ's weighing of the medical opinion evidence and the explanations thereof, Plaintiff's testimony, and "notable inconsistencies in [Plaintiff]'s file" (Tr. 24-27).

When examining the "notable inconsistencies", the ALJ recounted that Plaintiff claimed he was unable to perform work-related activities, but "he is nonetheless able to perform activities of daily [] living, drive a car, clean laundry, and shop in stores" (Tr. 27).   Further, while Plaintiff has HIV, the ALJ stated that "he has not shown any wasting syndrome" (Id.).   "Finally, while [Plaintiff] claims that he suffers from depression, he is able to interact with his spouse, attend church services and exhibits little deterioration in his ability to concentrate during psychological testing" (Id.).

While Plaintiff is correct that "perform[ing] simple functions, such as driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity[,]" (DN 17-1 PageID 655) (citing Walston v. Gardner, 381 F.2d 580, 586 (6th Cir. 1967)), and that Plaintiff does not have to "be

23

bedridden or wholly helpless in order to establish his claim for benefits[,]" (Id.) (citing Hall v. Celebrezze, 314 F.2d 686, 690 (6th Cir. 1963)), the ALJ's ultimate determination in assessing Plaintiff's subjective symptoms is supported by substantial evidence.   The ALJ thoroughly reviewed the evidence in the record, the medical opinions, and Plaintiff's own testimony to make a determination (Tr. 24-27).   While Plaintiff objects to the ALJ's "boilerplate language (DN 17-1 PageID 653-54), this language was not the only analysis of the evidence.   Instead, the "boilerplate language" was a succinct conclusion to the pages of analysis that proceeded (Tr. 27).

Plaintiff claims that the "simple functions" that he was purportedly able to do was improperly characterized.   Plaintiff argued that when he drove short distances alone, " he would be tired, became confused, distracted or fell asleep" (DN 17-1 PageID 656 (citing Tr. 197); "[Plaintiff] wrote that he may not complete all personal care at one or even daily[;]" "[i]f he did laundry, it was spread out over a few days" (Id. citing Tr. 196); "[i]f he [went] shopping in stores, which was rarely, it was in smaller shops[, and h]e would go with his spouse" (Id. citing (Tr. 197, 220), and when Plaintiff visited Ms. Scott, he "reported irregular sleep, feeling tired during the day, he did not cook meals, had limited energy for being outside in the yard and did not complete grocery shopping" (Id. citing Tr. 358).   As for Plaintiff's HIV, the ALJ noted that Plaintiff did not exhibit any evidence of wasting syndrome, but Plaintiff argues that the primary issue "stemming from [his] HIV is chronic fatigue" (Id.).

The ALJ's determination explicitly noted Plaintiff's complaints of fatigue, the inability to walk distances without resting, and that "medication proved useless in early 2017 as he continued to be fatigued" (Tr. 25).   The ALJ cited to Plaintiff's spouse's function report regarding Plaintiff's abilities, and the function report stated that there were no problems with personal care except for

reminders to shave; Plaintiff is able to prepare his own meals, but he only prepares sandwiches and cereal; Plaintiff is able to do laundry, which only takes him approximately fifteen to twenty minutes; Plaintiff is unable to do house or yard work due to leg pain and shortness of breath; is able to shop, albeit in smaller stores;  he is able to pay bills, count change, handle a savings account, and use a checkbook/money order; and goes to church on Sundays, but gets frustrated and mood changes around friends and family (Tr. 218-22).   Finally, the ALJ stated that Plaintiff was able to concentrate during the consultative examination by Ms. Scott, even though Ms. Scott noted that Plaintiff's ability to concentrate was moderately limited (Tr. 25, 357-61).

As for Plaintiff's depression, Plaintiff argues that the ALJ failed to include reports of Plaintiff's struggle with concentration and impulsivity, including instances of "snapping" at his spouse, throwing or breaking items when angered, and an inability to work with authority figures, which led to quitting several jobs (DN 17-1 PageID 656-57).   To bolster these claims, Plaintiff cited comments from Nurse Strader and Ms. Scott (Id.).   However, the ALJ, when awarding some weight to Ms. Scott, noted her limitations for Plaintiff, but the ALJ found that some of the limitations were not supported by evidence in the record (Tr. 26).   Nurse Strader's opinion was not an "acceptable medical source" under the regulations, so while it was not awarded any weight, it was still important to consider (Tr. 27).   *See also* 20 C.F.R. § 404.1527.   But the ALJ ultimately found that Nurse Strader's comments were "excessive given the medical evidence and [were] wildly inconsistent with the other medical opinions" (Tr. 27).   As noted above, the ALJ's assignment of weight regarding medical opinions, and the comments contained therein, is supported by substantial evidence.

Therefore, the ALJ's analysis of Plaintiff's subjective symptoms is supported by substantial evidence, and the ALJ opinion creates a logical and accurate bridge between the record and the result.   As such, Plaintiff is not entitled to relief under this challenge.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

RECOMMENDATION

For the foregoing reasons, the undersigned recommends the final decision of the Commissioner be **AFFIRMED**, and judgment should be **GRANTED** for the Commissioner because the ALJ's determination is supported by substantial evidence and comports with applicable law.

H. Brent Brennenstuhl
**United States Magistrate Judge**

March 17, 2021

26

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and FED. R. CIV. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.   Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2).   If a party has objections, such objections must be timely filed, or further appeal is waived.   <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, U.S. 140 (1984).

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

March 17, 2021

Copies:        Counsel of Record